UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Zeljko Vuk, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 17 cv 5712 |
| v. | ) |
| | ) |
| OSG Group, Inc., | ) JURY DEMANDED |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff Zeljko Vuk makes the following complaint and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Zeljko Vuk ("Vuk") is an adult resident of the state of Illinois residing in Cook County.

2. Vuk was 64 years old at the time of his termination.

3. OSG Group Inc. is an organization doing business in the state of Illinois that employed Vuk until October 20, of 2016.

4. This Court has personal and subject matter jurisdiction over the defendant under the Americans with Disabilities Act 42 U.S.C. § 12101, et seq. ("ADA"), the Age Discrimination in Employment Act, 29 U.SC § 621, et al. ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. ¶ 2612 ("FMLA").

5. Venue is proper pursuant to 28 U.S.C. § 1391 because the claims asserted in this action arose in this district and the alleged discrimination and damages occurred in this district.

**ALLEGATIONS COMMON TO ALL COUNTS AND**
**INCORPORATED BY REFERENCE**

6. Vuk worked for Defendant OSG and its predecessor company for nearly 30 years as a tool maker.

7. Vuk's last position was CNC Setup.

8. Vuk's position was a physically demanding one, requiring that he stand for nearly all of his 8 – 10 hours shift.

9. Even when injuries were likely the result of work, Vuk never considered complaining or filing a workers' compensation claim. He could easily have attributed back problems he experienced in 2014 to a recent work-related fall, but instead requested and was granted short term disability to have surgery and recover.

10. In the three or four years before he was terminated, Vuk noticed a disturbing age-biased trend. First, he was constantly being relied upon to train must younger and inexperienced employees in addition to keeping up with the full-time duties already assigned to him. Second, another worker my age was terminated for a bogus reason.

11. On January 27, 2016 Vuk suffered a knee injury on the job. When he reported the injury to HR he was encouraged to "walk it off." No one suggested that he file the appropriate workers' compensation paperwork and indeed, he was discouraged from doing so.

12. Vuk worked through the knee pain for over a month, but finally went back to HR to request that a workers' compensation claim be filed on his behalf. An HR representative refused his request. Vuk was baffled and frustrated.

13. Vuk's treating physician took him off work at his next appointment, on or about March 18, 2016. Vuks' doctor was able to get a workers' compensation claim opened, and Vuk began receiving temporary total disability ("TTD") benefits shortly thereafter.

14. Vuk retained an attorney to assist him with the workers' compensation claim in the summer of 2016.

15. In early August 2016, Kelly Turk, OSG's Compensation and Benefits Specialist, advised Vuk via letter that he owed the employee contribution for 17 prior weeks of insurance.

16. Prior to that time no one had asked Vuk to complete FMLA paperwork or given him any reason to suggest that his absence was being counted toward his FMLA entitlement.

17. After Vuk's treating physician recommended a total knee replacement in late August of 2016, OSG's workers' compensation carrier referred him for an independent medical examination (IME) but did not schedule the appointment until October 6.

18. Vuk remained on TTD, continued paying his portion of health insurance premiums, and scheduled his knee replacement surgery for November 1, 2016.

19. On October 10, 2016 Kelly Turk called Vuk to tell him was expected back to work, based on the IME report. Vuk was confused, as no one from OSG had explained the IME or what it meant.

20. Vuk persisted in suggesting he could not return, and Turk agreed to assist him in obtaining short-term disability so that he could have his scheduled surgery.

21. Turk gave Vuk until the end of the week, Friday, October 14, 2016, to provide completed disability certification forms and the standard DOL FMLA medical certification form, which he did.

22. Vuk did not hear from Turk the following Monday or Tuesday, and when he called her on Wednesday, October 20, 2016 she advised him that he had been terminated.

23. When Vuk protested, Turk suggested that management had decided to fire him for "exhausted leave."

24. OSG terminated Vuk's insurance the day he was fired, rather than the end of the month.

25. When Vuk called Turk the following day to inquire about filing a claim under the long-term disability plan, Turk told him "that's a third party company. I have nothing to do with that." When Vuk asked her why he had been paying premiums for years and years if he couldn't use the benefit, Turk had no response.[1]

26. Vuk filed his EEOC charge on December 16, 2016, and after an EEOC mediation on of the case failed to result in a reasonable settlement offer, Vuk's counsel requested a right to sue, which she received on May 6, 2017. (Exhibit 1.)

### COUNT I: Americans with Disabilities Act
### Discrimination under 42 U.S.C. § 12101, et seq.
### Retaliation under 42 U.S.C. § 12203

27. Vuk incorporates the statements contained in the preceding paragraphs as though set forth fully herein.

28. Vuk has a disability, and/or is perceived by his employer as having a disability.

29. Vuk was qualified for his position and able to perform its essential functions.

30. Vuk requested the reasonable accommodation of time away from work to have surgery.

31. OSG, through HR agent Turk, promised to help Vuk obtain a leave that would enable him to have the scheduled surgery.

32. OSG did not assist Vuk in obtaining the requested leave.

33. OSG terminated Vuk on October 20, 2016.

34. OSG subjected Vuk to a tangible employment action (termination) instead of providing him with the requested reasonable accommodation of time away from work to obtain a scheduled surgery.

---

[1] Bizarrely, Turk later represented to Vuk's counsel that she had begun work on the LTD policy application on October 20, 2016, the day before Vuk made any request for the benefit.

4

35. OSG violated the ADA by treating Vuk differently than similarly situated non-disabled employees, who were not terminated for requesting leave.

36. OSG has violated the ADA by retaliating against Vuk for requesting a reasonable accommodation by terminating him.

37. As a result of OSG's wrongful actions, Vuk has suffered lost wages, loss of other employment benefits, emotional distress, loss of employment and promotional opportunities, and other damages.

WHEREFORE, Plaintiff Zeljko Vuk respectfully requests that this Court award all monetary and non-monetary amounts available under law including, but not limited to:

(a) compensatory damages;

(b) lost wages including back pay and front pay;

(c) reinstatement;

(d) pre-judgment interest on all amounts awarded;

(e) punitive damages;

(f) litigation costs and reasonable attorney's fees;

(g) all other such relief as the court may deem just and proper.

**COUNT II Age Discrimination in Employment Act 29 U.S.C. § 621, et seq.**

38. Vuk incorporates the statements contained in the preceding paragraphs as though set forth fully herein.

39. Vuk is a qualified individual and member of the protected class of employees over the age of 40. He was 64 when he was terminated.

40. At all times Vuk was capable of and did perform his job reasonably and consistent with his employer's legitimate expectations.

5

41. Despite his reasonable performance, he was subjected to the following adverse employment actions:

(a) being forced to train younger employees in addition to maintaining his own full-time workload;

(b) not being allowed the reasonable accommodation of time away from work to have a necessary surgery;

(c) being terminated under the guise of "exhausted leave" when OSG had not designated his time away as FMLA; had promised to assist him in obtaining short-term disability; and deprived him of information and access to the long-term disability policy for he had paid premiums for many years.

42. Defendant OSG has violated the ADEA by treating younger workers more favorably than older workers.

43. Defendant OSG's actions were willful violation and showed reckless disregard for Vuk's rights under the law.

44. As a result of Defendant OSGs wrongful actions, Vuk has suffered lost wages, loss of other employment benefits, emotional distress, loss of employment and promotional opportunities, and other damages.

WHEREFORE, Plaintiff Zeljko Vuk respectfully requests that this court award all monetary and non-monetary amounts available under law including, but not limited to:

(a) lost wages and benefits including back pay;

(b) reinstatement to his same or an equivalent position or front pay;

(c) pre-judgment interest on all amounts awarded;

(d) liquidated damages;

(e) litigation costs and attorney's fees;

(f) all other such relief as the court may deem just and proper.

## COUNT III: Family and Medical Leave Act
## Interference and Retaliation
## 29 U.S.C. §2615(a)(1) and (a)(2)

45. Vuk incorporates the statements contained in the preceding paragraphs as though set forth fully herein.

46. Vuk was an eligible employee under the FMLA.

47. OSG is an employer as defined under the FMLA.

48. Vuk was entitled to leave pursuant to the FMLA.

49. Vuk never requested FMLA until HR representative Turk requested that he complete the standard DOL forms a few days before he was terminated.

50. The FMLA authorized Vuk to request time away from work to address her own serious health condition.

51. Vuk was denied a benefit of 12 weeks of FMLA leave to which he was entitled under the FMLA.

52. OSG interfered with Vuk's rights under the FMLA by failing to allow Vuk to use 12 weeks of leave to address his own serious health condition.

53. OSG interfered with Vuk's rights under the FMLA by failing to properly designate workers' compensation leave as running concurrently with Vuk's FMLA designation, if that was, in fact OSG's intention and desire.

54. To the contrary, OSG never notified Vuk that they intended for his workers' compensation absence to count toward his FMLA entitlement.

55. To the contrary, OSG retaliated against Vuk for attempting to use his 12 weeks of FMLA after OSG had failed to designate his leave entitlement as running concurrently with his workers' compensation time.

56. Vuk suffered an adverse employment action when Defendant terminated him.

57. As a result of OSG's interference and retaliation, Vuk has suffered lost wages, loss of other employment benefits, loss of employment and its related security, emotional distress, loss of employment opportunities, and other damages.

WHEREFORE, Plaintiff Zeljko Vuk respectfully requests that this court award all monetary and non-monetary amounts available under law including, but not limited to:

(a) lost wages and benefits including back pay;

(b) reinstatement to his same or an equivalent position or front pay;

(c) actual damages;

(d) pre-judgment interest on all amounts awarded;

(e) liquidated damages;

(f) litigation costs and attorney's fees;

(g) all other such relief as the court may deem just and proper

**COUNT IV – Retaliatory Discharge in Violation of the Public Policy of Illinois**

58. Vuk incorporates the statements contained in the preceding paragraphs as though set forth fully herein.

59. The State of Illinois has a strong public policy to protect the rights of employees to exercise the rights afforded to them by the Workers' Compensation Act.

60. Plaintiff was wrongfully disciplined and discharged in retaliation for filing a workers' compensation claim.

61. Plaintiff was wrongfully discharged in retaliation for obtaining a lawyer to assist him with his claim.

62. Plaintiff was wrongfully discharged for asserting his rights to medical treatment under the Workers' Compensation Act.

61. As a result of Defendant's wrongful actions, Plaintiff has suffered lost wages, loss of other employment benefits, loss of employment and its related security, emotional distress, loss of employment opportunities, and other damages.

WHEREFORE, Plaintiff Zeljko Vuk respectfully requests that this court award all monetary and non-monetary amounts available under law including, but not limited to:

a. reinstatement or front pay;

b. compensatory damages;

c. lost wages including back pay;

d. an amount to compensate him for lost future earnings;

e. punitive damages;

f. pre-judgment interest on all amounts awarded;

g. litigation costs and reasonable attorney's fees;

h. all other such relief as the court may deem just and proper.

i.

**JURY DEMANDED FOR ALL COUNTS**

Respectfully submitted

_____/s/\_\_\_\_\_Lisa L. Clay_____
Lisa L. Clay, Attorney at Law
345 North Canal Street
Suite C202
Chicago, IL 60606
Phone: 312.753.5302
lclayaal@gmail.com
ARDC # 6277257